UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03-cv-477

| | |
|---|---|
| CHARLES ALAN EDWARDS and JOANNE LEE EDWARDS, | )<br>)<br>) |
| Plaintiffs, | )      MEMORANDUM AND ORDER |
| v. | )<br>) |
| CONSUMAT ENVIRONMENTAL SYSTEMS, INC., and/or its successor(s); CONSUTECH SYSTEMS, INC., and/or its successor(s); CONSUTECH SYSTEMS, L.L.C., and/or its successor(s), | )<br>)<br>)<br>)<br>) |
| Defendants, | ) |
| and | ) |
| BMWNC, INC., and LIBERTY MUTUAL INSURANCE GROUP, | )<br>) |
| Unnamed Parties. | ) |

On January 29, 2007, this Court held a hearing on Plaintiff Charles Edward's Motion for an Order pursuant to N.C.G.S. §97-10.2(j) to determine the amount, if any, to be paid to Plaintiff's employer and/or its workers' compensation insurance carrier from certain settlement proceeds in this action in full and final satisfaction of any lien imposed by or claimed pursuant to N.C.G.S. §97-10.2 by the Unnamed Parties for workers' compensation benefits paid to or on behalf of Plaintiff Charles Edwards under the North Carolina Workers' Compensation Act. At the hearing, Charles McB. Sasser appeared for Plaintiffs, S. Andrew Jurs appeared for the Unnamed Parties, BMWNC, Inc. and

1

Liberty Mutual. Defendants Consumat Environmental Systems, Inc., et al. did not enter an appearance through counsel.

STIPULATED FACTS

At the hearing, Plaintiff and the Unnamed Parties stipulated to the following facts, which the Court hereby adopts and finds as follows:

1. At all times relevant to this matter, Plaintiff Charles Edwards was employed as a maintenance worker by the Unnamed Party BMWNC (Bio-Medical Waste of North Carolina), Inc.

2. On September 27, 2003, Mr. Edwards was seriously and permanently injured at his place of employment, when the lower half of his body was crushed inside the loading chute of a medical waste incinerator designed and manufactured by Defendants.

3. On September 27, 2003, Mr. Edwards filed this third-party tort action alleging, *inter alia*, that Defendants negligently designed and manufactured the incinerator in which Mr. Edwards was working at the time of his injury, and that this negligence was one proximate cause of his injuries.

4. At the time of his injury, Mr. Edwards was repairing a hydraulic hose leak inside the incinerator chute, when the chute's ram suddenly engaged, trapping, twisting and tearing Mr. Edwards' body at his hips and pelvis, and resulting in the amputation of both of his legs at the hips, placement of a suprabubic catheter and a colostomy, erectile dysfunction, chronic, severe pain and skin breakdown, and other serious and permanent injuries.

5. As a result of his injuries, Mr. Edwards has undergone multiple surgeries and months of rehabilitation, and he continues to experience great physical pain and mental suffering. As a result of his injuries, Mr. Edwards can sit in an upright position for limited amounts of time only through

the use of a special "bucket" prosthesis. And as a result of his injuries, Mr. Edwards has lost his capacity to work at any occupation for which he is vocationally suited.

6. At the time of his injury, Mr. Edwards was married with four children ages 11 and under. Though his wife was also employed, Mr. Edwards was the chief bread-winner for his family.

7. The Unnamed Parties, consisting of Mr. Edwards' employer, BMWNC, Inc. and its workers' compensation insurance carrier Liberty Mutual Insurance Group (hereinafter "Liberty"), have paid and may continue to pay to Mr. Edwards and his medical providers certain indemnity and medical benefits under the North Carolina Workers' Compensation Act, N.C.G.S. §97-1, et seq. (hereinafter, "the Act").

8. Mr. Edwards receives $455.91 in weekly workers' compensation benefits, equal to approximately two-thirds of his pre-injury wages. Liberty has paid Mr. Edwards approximately $292,150.34 in weekly indemnity checks since the date of his injury (and through approximately the filing date of Plaintiff's motion). Liberty has also made certain medical payments on Mr. Edwards' behalf totaling approximately $1,160,480.20 through approximately the date of his Motion.

9. Assuming Mr. Edwards lives for the remainder of his 42 year life expectancy and that his workers' compensation claim is never finally resolved by clincher agreement, the present value of Mr. Edwards' future weekly workers' compensation benefits is $285,932.58 (at an 8% discount rate). Based on these same assumptions, the future medical benefits incident to his injuries and for which the Unnamed Parties would be responsible will total at least $760,000 or more. The Unnamed Parties' professional Medicare Set Aside vendor (Sagrillo, Hammond & Dineen, L.L.C.) has predicted that Mr. Edwards' future injury-related medical expenses for which workers' compensation should be responsible and that would be accepted by the United States Centers for Medicare and

Medicaid Services (CMS) as Plaintiff's Medicare Set Aside (MSA) will total approximately $761,189.14.

10. The past and prospective workers' compensation indemnity and medical benefits paid to or on behalf of Mr. Edwards bear some relationship, albeit at a reduced rate, to payments for certain of Mr. Edwards' past and prospective economic losses (i.e., lost wages and medical expenses) arising from his injuries.

11. Mr. Edwards will likely never work again at competitive employment. He will require lifetime medical care, including, but not limited to, home health and attendant care services, pain management, wound care and urological treatment.

12. Mr. Edwards will continue to experience significant wage loss as a result of his injuries: Mr. Edwards was earning an average weekly wage of at least $684.00 and now is permanently and totally disabled. His weekly workers' compensation benefit, as noted above, is only $455.91. His life expectancy is 42 years.

13. Mr. Edwards will continue to incur significant future medical expenses. He continues to experience chronic, debilitating pain on a daily basis and presently requires attendant care services seven days a week. Mr. Edwards also takes multiple medications on prescription from his doctors and requires specialized equipment, including, but not limited to various types of wheelchairs, prosthetic devices and accessible transportation. His future injury related medical expenses have been estimated to total more than $760,000 but well may be significantly greater.

## ADDITIONAL FINDINGS OF FACT

Having considered the pleadings, evidence and argument presented by all interested parties,

the Court now enters the following:

14. At trial, Plaintiff Edwards would seek significant non-economic damages that are not provided to him under the Workers' Compensation Act. Such additional damages would include:

a. Plaintiff's extensive physical pain and mental suffering that he has experienced since the accident (N.C. Pattern Jury Instruction 810.08).

b. Plaintiff's separate, significant damages for his disfigurement as a result of the accident (N.C. Pattern Jury Instruction 810.10).

c. Plaintiff's separate, significant damages for the loss of his legs (N.C. Pattern Jury lnstruction 810.12);

d. Plaintiff's separate, significant damages for his permanent injuries, that is, for the permanent effects of his injuries throughout the remainder of his life, including the permanency of his physical pain and mental suffering, his permanent disfigurement and his permanent loss of use of parts of his body, such as his feet and legs (N.C. Pattern Jury Instruction 810.14).

15. At trial, any one of the items of non-economic damages set forth in Paragraphs 14(a)-(d) above would reasonably support an award by the fact finder in excess of several million dollars, and these damages are in addition to the economic damages Plaintiff Edwards would prove at trial, such as his past and future medical costs, and his past and future lost wages and benefits.

16. The named Parties have a significant need for finality in this litigation. In particular, Plaintiff needs to focus on rebuilding his life and not on the continued stress and anxiety that further litigation and trial of the third party action would cause. Defendants need to acquire economic certainty and finality with respect to Plaintiffs' lawsuit.

17. The combination of Plaintiff Edward's gross recovery from the settlement of the third-party

5

action against Defendants and his workers' compensation benefits does not adequately or fully compensate Mr. Edwards for his injuries, and to reduce this recovery by imposition of a lien would preclude Plaintiff from receiving any semblance of a just and adequate recovery for his physical pain and mental suffering, his disfigurement, his loss of limbs, and the permanent effects of his injuries throughout the remainder of his life, and not including his economic losses for past and future wages and past and future medical benefits.

18. The likelihood of Plaintiff prevailing at trial on his third-party action is uncertain, in that it involves controverted issues of fact and law, including issues involving the North Carolina Statute of Repose, N.C.G.S. §I-50(a), the concurrent negligence of Mr. Edwards' employer in causing his accident, and the issue whether Plaintiff was contributorily negligent in causing his injuries. If proven, a finding that the Statute of Repose had expired at the time of Plaintiff Edward's injury or a finding of contributory negligence would result in a total bar to any recovery by Plaintiff.

19. Plaintiffs and Defendants have agreed upon a settlement of this action in which Defendants will pay a total of $225,000 to resolve the matter. Plaintiff estimates that his net recovery after attorneys' fees and litigation expenses will be approximately $130,000, but dependent on the final tabulation of these fees and expenses.

20. Fair and equitable compensation for the injuries and damages sustained by Plaintiff Edwards far exceeds the amount of all total compensation that has been or will be paid to him or on his behalf from both this settlement and his workers' compensation benefits.

21. Neither the employer nor the workers' compensation insurance carrier initiated, cooperated or participated in prosecuting the Plaintiff Edward's claim against the third-party defendants in this action. N.C.G.S. §97-10.2(c).

22. Neither the employer nor its workers' compensation insurance carrier advanced or contributed any part of Plaintiff Edward's court or litigation costs in prosecuting his third-party action.

23. The Court need not rely on any reduction in the settlement for an allocation to loss of consortium in order to warrant extinguishing the lien. Even before such a reduction in the tort settlement proceeds, and as noted above, the total of the gross recovery in this action and all of the past and prospective workers' compensation payments is markedly insufficient and unreasonable to adequately compensate Plaintiff Charles Edwards for the extreme and staggering non-economic damages he has suffered. Indeed, because Mr. Edwards' past and prospective workers' compensation benefits may be viewed as a reduced payment for his economic losses alone, he is, in effect, receiving only $225,000 through this settlement for his non-economic tort damages and this amount is not reasonable, equitable or sufficient to compensate him for these losses. On this ground alone, it is reasonable and just for the Court to strike and extinguish the workers' compensation lien in its entirety, and the Court need not rely on such other compelling factors for extinguishing the lien as the employer's concurrent negligence, the absence of any contribution by the non-parties to the Plaintiff's prosecution of this action, and the reduction in the settlement by an allocation for loss of consortium damages.

## CONCLUSIONS OF LAW

Based on the foregoing Stipulated Facts and Findings of Fact, and based further on the entire record in this cause, the Court reaches the following conclusions of law:

1. This matter is properly before the Court and the Court has jurisdiction over the parties and the subject matter of the proceeding.

2.  All interested parties, including the Plaintiff's employer and its insurance carrier, were properly notified of Plaintiff's motion and presented with the opportunity to be heard.

3.  The cases relied upon by Plaintiff Edwards in Paragraph No. 23 of the Motion stand for the propositions described therein, and the Court concludes that these cases provide a further basis for granting the relief ordered hereby.

4.  Under N.C.G.S. §97-10.2(j), this Court has the discretion to determine the amount, if any, of the subrogation lien that may otherwise arise in favor of the employer and/or its workers' compensation insurance carrier on the basis of their past and prospective workers' compensation payments to or on behalf of Plaintiff Charles Edwards.

5.  To allow the Unnamed Parties to recover any part of the claimed lien for workers' compensation payments would not be equitable, just or reasonable on the record of this case and on the facts as shown hereinabove.

6.  In light of the entire record, the Stipulated Facts and the Findings of Fact hereinabove, and based further on the factors set forth in N.C.G.S. §97-10.2(j), the Court in its discretion determines that it is fair, just and equitable that the lien of the Unnamed Parties, BMWNC, Inc. and Liberty Mutual Insurance Group, for past and prospective workers' compensation benefits paid to or on behalf of Plaintiff Charles Edwards be extinguished and reduced in its entirety to the sum of zero and that any such lien claim be set aside and vacated.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that, in the discretion of the Court, the subrogation lien claimed by the Unnamed Parties BMWNC, Inc. and Liberty Mutual Insurance Group for workers' compensation benefits which have been paid to or on behalf of

Plaintiff, Charles Edwards, should be and the same hereby is reduced to zero, that any such lien be set aside, vacated and extinguished, and that Plaintiffs' counsel should be and hereby is authorized to disburse the settlement proceeds in accordance with this Order and the following schedule:

A.  Payment of any litigation costs and expenses incurred by Plaintiff Charles Edwards or his counsel in prosecuting this cause;

B.  Payment of attorneys' fees to Plaintiffs' counsel; and

C.  Payment of all remaining amounts to Plaintiffs.

Signed: March 26, 2007

*[signature]*

Robert J. Conrad, Jr.
Chief United States District Judge